## SCHWABACHER et al. v. JENNINGS et al.

No. 16059—Opinion Filed March 16, 1926.

Rehearing Denied May 18, 1926.

1. **Indians—Judgment—Res Judicata—Judgment in Former Action Upholding Guardian's Sale as Concluding Defense to Mortgage Foreclosure.**

Where the mortgagee or assignee of a real estate mortgage brings action to foreclose, and defendants are unrestricted Chickasaw Indian minors, except as to minority, and the lands involved are their allotments as such Indians, the title to which they have been divested of by a guardian's sale, under the orders of the county court, and validity of which has been determined against them in an action by their next friend to set aside the sales proceedings on the ground of fraud, and defendants, in their defense against the petition to foreclose, plead the same facts of fraud as were pleaded in their action decided against them, and plaintiff in his reply pleads the record and judgment in said former action as res judicata of defendants' rights in the action to foreclose, and the proof shows that the same issues of fraud are tendered as a defense as were determined in the former action, it is error for the court not to sustain the plea of res judicata.

2. **Judgment—Plea of Res Judicata not Waiver of Right to Plead to Merits.**

A party to an action does not waive his right to plead and contest his opponent's claim on the merits by pleading the issue of res judicata.

3. **Appeal and Error—Review of Evidence in Equity Case—Objections Below.**

In an equity case this court will review the evidence as a question of fact and apply the law and principles of equity thereto and pronounce such judgment as the pleadings, the facts, and the principles of equity demand, whether objections to the evidence or findings of the court have been made or not.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garvin County; A. C. Barrett, Judge.

Action by Louis H. Schwabacher et al. against Clarence J. Jennings et al. Judgment for defendants, and plaintiffs appeal. Reversed and remanded, with directions.

S. W. Hayes, A. W. Gilliland, and Blanton, Osborn & Curtis, for plaintiffs in error.

J. T. Wheeler and Sigler & Jackson, for defendants in error.

Opinion by THREADGILL, C. The ques-

tion involved in this appeal is the right of the plaintiffs in error, who were plaintiffs in the trial court, to foreclose a real estate mortgage against the allotted lands of the Jennings minors, who were enrolled as 1-64th Chickasaw Indians, and their lands sold by the guardian and the mortgage given by the purchaser. The decisive question underlying this proposition, under the facts disclosed by the record, is whether or not unrestricted Indian minors (except minority) are concluded in an action to foreclose a mortgage on their lands given by the purchaser in a fraudulent guardian's sale, by a judgment rendered against them in an action by their next friend to cancel the said mortgage.

The facts in the case are substantially as follows: In 1912, James A., Vernon H., and Charles T. Jennings, Chickasaw Indians of 1-64th blood, resided with their father and mother, William and Mary J. Jennings, in Garvin county, Okla. Said William Jennings was their guardian and he entered into an agreement with his brother, Clarence J. Jennings, who was a resident of the state of Arkansas, to put through a guardian's sale of his three minor children's allotted lands, situated in Garvin county, and his brother was to buy the lands for a valuable consideration on the face of the record without paying for the same, and after completing the record, his brother was to obtain a loan on the lands in his name and turn the money over to him (William Jennings), for his own use and benefit, and then deed the lands back to the minors. This agreement was carried out, and on August 27, 1912, upon application of said Clarence J. Jennings, the American Investment Company made him a loan on the lands, including ten acres he owned himself in the same neighborhood, in the sum of $3,700. As evidence of the transaction, he executed his coupon note for the amount of the loan due and payable January 1, 1923, also mortgage on the lands to secure the note. As a part of the same transaction, there was a commission note to C. S. Estell, who acted as the agent of the American Investment Company, for the sum of $1,110, secured by second mortgage on the said lands. William Jennings, who was the guardian, received this money, used it for his own benefit, and deserted his family. There is evidence in the record that at the time C. E. Estell went out to inspect the lands for the loan, that the mother of the minors informed him that the sale of the lands was fraudulent, that there was no consideration for the sale, but it was made for the purpose of getting the loan for the use of their father, and that

she intended to bring suit to cancel the sale and the deeds. This testimony was denied by the plaintiffs. After the loan was executed the lands were deeded back to the minors, burdened with the mortgages, which deeds were never placed of record, and, in fact, were lost. The minors were not at any time deprived of possession of the lands, were in possession at the time the agent, Estell, inspected them for the loan, and at the time the loan was made, as well as when this action was commenced to foreclose the mortgage to the American Investment Company. The record discloses that the note and mortgage were assigned several times after their execution, and all of the assignments were made after default in the payment of the first interest coupon note. This default rendered the entire indebtedness due and enforceable at the option of the mortgagee or its assigns, which it did not see fit to exercise until March 31, 1919, when this action was brought by plaintiff Louis G. Schwabacher, the last assignee, to foreclose the mortgage. The record further discloses that the minors, by their mother as next friend, on May 19, 1913, filed suit in the district court of Garvin county against Charles H. and William Jennings, the American Investment Company, and C. E. E'tell, to cancel the guardian sale proceedings and the deeds of the guardian to Charles H. Jennings, and the mortgage to the American Investment Company for $3,700, and the mortgage to C. E. Estell for the $1,110 on the ground of fraud, the same as pleaded as a defense in this action, and, after issues joined, said cause was tried on September 29, 1914, and judgment rendered in favor of the defendants; the court holding there was no fraud and the deeds and mortgages complained of were valid, binding and conclusive upon the said minors. This judgment was not appealed from, and the plaintiff in the foreclosure action pleaded this judgment as res judicata to the defense of fraud made by the defendants. In the pleadings they first deny all the allegations of fraud set up by the defendants, and then plead this judgment, and contend that the defendants are concluded by it. All the parties plaintiff were in the mortgage chain of title. The cause was tried to the court without a jury on January 7, 1924, and on July 15, 1924, the court made findings of fact and conclusions of law, finding that the guardian's sale and deeds and mortgages were fraudulent and invalid for any purpose against the minors, and the assignees of the mortgagee were not innocent purchasers for value; that the judgment of September 29, 1914, was not res judicata of the rights of the minors,

for the reason that they were Chickasaw Indians by blood, and the lands involved were their allotted lands, and, thereupon, the court rendered judgment in favor of the defendants, giving them the lands, except the ten acres originally belonging to Clarence Jennings, and canceling the claims of the plaintiffs as clouds on their titles, and from this judgment the plaintiffs have appealed to this court and pray a reversal of the judgment.

Plaintiffs state 14 assignments of error, the first being "error of the court in overruling a motion for new trial," the next two, "errors of introducing evidence," the fourth, "errors of law occurring at the trial," and the next ten leveled at errors of the findings of fact and conclusions of law: but the principal contention of plaintiffs, to use their own language, is:

"That the judgment of the district court of Garvin county, Okla., in the case filed by the Jennings minors by their mother as next friend, in which the court held that the mortgage sought to be foreclosed here was a valid and subsisting lien on the lands described therein, was res judicata, and that these minors and anyone claiming an interest by, through or under them, in the lands involved, were precluded by said judgment from raising in the present action any question as to the validity of the mortgage that was raised or could have been raised in the former action."

In support of this contention plaintiffs rely upon the case of Fulsom v. Mason, 107 Okla. 70, 229 Pac. 1072, decided by this court October 21, 1924. The action involved the Indian Fulsom's right to recover an interest in certain inherited Indian land by virtue of his being the son of his alleged father, and this question, as to whether or not he was the son of said father, having been at issue and determined against him in a former suit, it was held as res judicata of his rights in this action. Justice Branson, speaking for the court, points out that the laws of Congress are paramount to state laws and court procedure, where there is a conflict in their application to Indians and their property as such, but he concludes, as to the application of the federal and state laws to the facts in the particular case, that there is no conflict. He states:

"The alleged rights of Indian citizens and their properties arising by virtue of the allotment acts touching the Five Civilized Tribes are subject to the same rules of adjudication as other citizens of Oklahoma, in all particulars drawn in question and in issue here."

The syllabus announces the following rule:
"A right, question, or fact distinctly put at issue and directly determined by a court of competent jurisdiction, cannot be disputed in a subsequent suit between the same parties or their privies, though the subsequent suit be on a different cause of action."

Plaintiffs also rely upon the case of Berry et al. v. Winstock et al., 102 Okla. 187, 228 Pac. 948, to sustain their contention. The action involved the right of heirs to the allotment of a deceased Mississippi Choctaw Indian to set aside a guardian's deed made pursuant to the orders of the county court by the guardian of the said heirs. The relief asked for was based upon the allegation that the record showed on its face that the land sold for less than 90 per cent. of its appraised value. The defendants pleaded a judgment obtained in their favor four years prior to this action in a suit by the same plaintiffs against the same defendants, involving the same issues of the invalidity of the guardian's deed by reason of the sale for less than 90 per cent. of the appraised value, and the court held that the former judgment was res judicata to the second action. The court stated the rule in the syllabus as follows:

"Where the answer of defendants specifically puts in issue every allegation in plaintiffs' petition, and contains also a plea of res judicata, and the record shows all the pleadings in the former case, and all the pleadings in the latter case, and further shows conclusively that every issue presented in the latter case was presented, considered, and finally adjudicated in the former case, between the same parties, such facts are sufficient to sustain such plea of res judicata."

It appears in that case that the Indian plaintiffs raised the point that the Indian minors could not be deprived of a federal right by state law or court procedure, just as the trial court in the case at bar held that the former judgment, in the case No. 1528 in the district court of Garvin county, could not be pleaded as an estoppel against the defendants because they were Indians by blood, and Justice Harrison speaking for the court said:

"This being true" (the same issue having been determined) "and there having been no appeal taken from the decision of this court to the Supreme Court of the United States, this court is concluded by law and by decisions based upon an essential public policy from again determining the same matter, hence the defendants' plea of res judicata must be sustained.

"The question, therefore, is not whether the state courts can deprive an Indian allottee or Indian heir of a federal right, but whether this court can redetermine any right which has already been finally determined

and not appealed from. If plaintiffs have been unlawfully deprived of a federal right, then resort may be had to the federal courts, and relief obtained in that forum, but the fact that plaintiffs did not avail themselves of·their right to resort to such forum, by appeal or otherwise, does not authorize this court to retry and redetermine matters which have already been finally determined in a former cause."

It is not a question here of the Indian minors being divested of title to their allotted lands by the judgment of the district court contrary to the federal statute, that this could only be done by the county court, but the question is whether or not the judgment of the district court adjudicating the validity of the sales proceedings of the county court concludes the parties as to the validity of such sales proceedings and estops them to deny the legality of the sale under the orders and judgment of the county court. It is not the district court that divests the title, the county court does this, if properly done, and the judgment of the district court determines the validity of the orders of the county court in the sales proceedings. The above case is so much like the case at bar, and the court made no difference in Indian allottees and Indian heirs, that we are forced to sustain plaintiffs' contention of res judicata, if there was no waiver of the rule.

But defendants contend that plaintiffs waived the plea of res judicata by pleading to the merits and joining issue on the questions of fraud and innocent purchaser for value, and by not objecting to evidence on these issues, citing the case of Megerle v. Ash, 33 Cal. 74. Plaintiffs call our attention to the fact, in their reply brief, that the holding contended for in this case was specifically overruled by Harding v. Harding, 148 Cal. 397, 83 Pac. 434. We have examined the case and find this to be correct. We have also examined note 19, pointed out by plaintiffs, under 34 C. J. 750, and find from the great weight of authority, as stated thereunder, that the general rule is to the effect that a defendant does not waive his rights under a judgment pleaded in bar by the mere act of also contesting plaintiffs' claim on the merits.

Defendants further contend that plaintiffs waived their right to object to the judgment based upon evidence establishing fraud, and the court's finding of facts of fraud, in making a sale of the land, and plaintiffs' guilty knowledge, by not objecting to the evidence and findings of the court on these issues, citing Rhome Milling Co. v. Farmers & Merchants National Bank of Hobart, 40 Okla. 131, 136 Pac. 1095; National Bank of Boy-

ertown v. Schufelt, 145 Fed. 509; Muskogee Electric Traction Co. v. Reed, 35 Okla. 334, 130 Pac. 157; Eoff v. Alexander, 62 Okla. 12, 161 Pac. 807; and Henderson v. Todd, 91 Okla. 18, 215 Pac. 607. We have examined these cases and find they were law actions and are not applicable to the point in question in equity cases.

"In an action at law an appeal presents to this court only questions of law, whereas in equity cases this court reviews the evidence as a question of fact, applies the law and principles of equity thereto, and pronounces such judgment as the pleadings, the facts, and the principles of equity demand," McDonald. Adm'r, v. Strawn, 78 Okla. 271, 190 Pac. 558.

The rule applicable here is stated in the third paragraph of the syllabus in this case last above cited, as follows:

"Neither a demurrer to the evidence, nor a motion to direct a verdict (if tried to a jury) nor motion for a declaration of law, nor finding of fact nor conclusion of law, is a necessary prerequisite to a review of the evidence in an equity case by this court on appeal, it being well settled that in equity cases this court will review the evidence as a question of fact, apply the law and the principles of equity thereto, and pronounce such judgment as the pleadings, the facts, and the principles of equity demand, and if the judgment of the trial court is clearly against the weight of the evidence, its judgment will be reversed or modified accordingly."

See, also, Papoose Oil Co. v. Swindler, 95 Okla. 264, 221 Pac. 506; St. Louis Carbonating & Mfg. Co. v. Lookeba State Bank, 59 Okla. 71, 157 Pac. 1046.

Upon a review of the whole record, we think the fraud pleaded and proved on the part of defendants, was sufficient to defeat the foreclosure, either at the suit of the mortgagee or the assignee. They all had sufficient notice of the fraud practiced by the guardian and his grantee in the guardian's sale to lead a reasonably prudent person to full knowledge of the facts, upon investigation, before spending money on the mortgage, and but for the rule of res judicata. as above stated, we would be disposed to affirm the judgment, but since this court is committed to the rule of res judicata as above announced, we are of the opinion that the trial court committed error in not applying the rule in the case in favor of plaintiffs.

The cause is therefore reversed, with directions to the district court of Garvin county to set aside the judgment appealed from and render judgment for plaintiffs.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 869 § 1282: p. 874 § 1283. (2) 31 Cyc. p. 157 (Anno). (3) 3 C. J. p. 839 § 745; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.